IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KELVIN SUMMERS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:11cv908-WHA |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a motion by Kelvin Summers ("Summers") to

vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  Doc. No. 1.[1]

## I.  INTRODUCTION

On December 9, 2009, a jury found Summers guilty of conspiracy to possess with

intent to distribute crack, in violation of 21 U.S.C. § 846, and distribution of crack, in

violation of 21 U.S.C. § 841(a)(1).  On February 17, 2010, the district court sentenced

Summers to 160 months in prison.  Summers appealed to the Eleventh Circuit, arguing that

the district court erred by (1) permitting a government confidential informant to refresh his

recollection by listening to audio and viewing video evidence outside the presence of the

jury; (2) denying his motion for judgment of acquittal, or in the alternative, new trial because

---

[1] Unless otherwise indicated, references to document numbers are those assigned by the Clerk in the instant civil action and are cited as "Doc. No. _ at _."  All page references are to those assigned by CM/ECF.  References to the trial record are to Doc. Nos.  150-52 in the criminal proceeding, Case No. 2:09cr31-MEF and are cited as "Tr.-Vol. I at _," "Tr.-Vol. II at _," or "Tr.-Vol. III at _."

there was insufficient evidence to show a conspiracy to possess with intent to distribute crack; and (3) applying a two-level role enhancement under U.S.S.G. § 3B1.1(c).  On April 8, 2011, the Eleventh Circuit affirmed Summers's convictions and sentence.  *United States v. Summers*, 422 Fed. App'x 838 (11th Cir. 2011).  Summers petitioned the United States Supreme Court for a writ of certiorari, which that court denied on October 3, 2011.  *Summers v. United States*, 132 S.Ct. 195 (2011) (No. 10-10958).

On October 17, 2011, Summers, proceeding *pro se*, filed this motion under 28 U.S.C. § 2255 asserting the following claims:

Claim 1:  His trial and appellate counsel were ineffective for failing to challenge prosecutorial misconduct in the government's intentional suppression of audiotape evidence and use of false testimony before the grand jury to obtain his indictment.

Claim 2:  His appellate counsel was ineffective for failing to advise him of his right to apply for rehearing or rehearing en banc following the adverse decision by the appellate court.

Claim 3:  He is entitled to a lesser sentence based on Sentencing Guidelines Amendments 750 and 759 and the Fair Sentencing Act of 2010.

Claim 4:  His trial and appellate counsel were ineffective for failing to object to or appeal the district court's decision not to sentence him using a 1:1 crack-to-powder-cocaine ratio.

Claim 5:  His trial and appellate counsel were ineffective for failing to argue the government did not prove the controlled substance for which he was sentenced was crack and not some other form of cocaine base, which would have resulted in a lower base offense level under U.S.S.G. § 2D1.1(c).

Claim 6:  His trial and appellate counsel were ineffective for failing to object to or appeal the use of his prior conviction for unauthorized use of a motor vehicle in calculating his criminal history points.

<u>Claim 7</u>:  His trial and appellate counsel were ineffective for failing to object to or appeal the addition of two points to his criminal history under U.S.S.G. § 4A1.1(d).

<u>Claim 8</u>:  His trial and appellate counsel were ineffective for failing to object to or appeal the district court's improper jury instructions.

Doc. No. 1 at 4-59; Doc. No. 2.[2]

After consideration of Summers's § 2255 motion, the submissions supporting and opposing the motion, and the record, the court concludes that an evidentiary hearing is not required and that, under Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the § 2255 motion should be denied.

## II.  DISCUSSION

### A.  General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that

---

[2] Doc. No. 2 is Summers's Memorandum of Law in Support of Motion under § 2255.

could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

## B.  Application of Amendments 750 and 759

In his § 2255 motion, Summers asserts he is entitled to a lesser sentence based on United States Sentencing Guidelines Amendments 750 and 759 and the Fair Sentencing Act of 2010.  *See* § 2255 Claim 3, Doc. No. 1 at 7; Doc. No. 2 at 11-12.

In Amendment 750 to the Sentencing Guidelines, the United States Sentencing Commission altered the Drug Quantity Table used to calculate the base offense levels corresponding to certain amounts of crack cocaine.  *See* U.S.S.G. App. C., Amend. 750 (2011); U.S.S.G. § 2D1.1.  Amendment 759 to the Sentencing Guidelines, which became effective on November 1, 2011, made Amendment 750 retroactively applicable.  *See* U.S.S.G. App. C., Amend. 759 (2011); U.S.S.G. § 1B1.10(c).

A district court may modify a sentence if the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  18 U.S.C. § 3582(c)(2).  The proper manner to seek a sentence reduction based on a retroactively applicable amendment to the Sentencing Guidelines is by moving for modification of sentence under 18 U.S.C. § 3582(c)(2),[3] which is what Summers

---

[3] *See United States v. Moreno*, 421 F.3d 1217, 1220 (11th Cir. 2005) ("Section 3582 only provides a district court with the discretion to reduce a sentence following the lowering of a sentencing range by the Sentencing Commission."); *United States v. Stossel*, 348 F.3d 1320, 1322

(continued...)

did on November 29, 2011, approximately six weeks after he filed his § 2255 motion.  *See*

Case No. 2:09cr31-MEF, Doc. No. 187.  In his § 3582(c)(2) motion, Summers argued that

Amendment 750 reduced the base offense level for his crime from 30 to 26 and his total

offense level from 32 to 28,[4] and consequently lowered his guidelines sentencing range.  *Id*.

at 2-5.  On October 24, 2012, the district court granted Summers's § 3582(c)(2) motion,

finding that Amendment 750 reduced his total offense level from 32 to 28 and lowered his

previous guideline range – 151 to 188 months – to 120 to 121 months.[5]  *Id.*, Doc. Nos. 191

& 192.  The court then reduced Summers sentence of 160 months in prison to 120 months

in prison.  *Id*.

   Because the district court granted Summers's § 3582(c)(2) motion and applied

Amendment 750 to grant him the relief he requests in Claim 3 of his § 2255 motion, this

---

[3](...continued)

n.2 (11th Cir. 2003) ("Appellant's motion could fit under § 3582(c) only if he was arguing his sentence should be modified based on a subsequent sentencing guideline amendment."); *United States v. Armstrong*, 347 F.3d 905, 907 (11th Cir. 2003) ("for a sentence to be reduced retroactively under § 3582(c)(2), a court must determine whether there has been an amendment to the Sentencing Guidelines that has lowered the guideline range applicable to that sentence and is listed under § 1B1.10(c)").

[4] A two-level sentence enhancement under U.S.S.G. § 3B1.1(c) was applied to Summers based on his supervisory role in the conspiracy.

[5] Summers had a criminal history category of III.  Although the Sentencing Table sets forth a guideline range of 97 to 121 months for offense levels of 28 combined with criminal history categories of III, the low end of Summers's amended guideline range was the ten-year statutory minimum applicable to his offenses.  *See United States v. Williams*, 549 F.3d 1337, 1341 (11th Cir. 2008) ("[W]hen a mandatory minimum exceeds some portion of the range for the base offense level, the applicable 'guideline range' would be from that minimum to the upper end of the original guideline range."); *United States v. Pope*, 58 F.3d 1567, 1568 n.1 (11th Cir. 1995) ("because of the statutorily mandated minimum of ten years, Pope's guidelines range became 120 to 121 months").

claim in Summers's § 2255 motion is moot.

### C.  Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance."  *Id*. (internal quotation marks and brackets omitted).  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"  *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  The

prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

The Supreme Court has held a criminal defendant's appellate counsel is not required

to raise all nonfrivolous issues on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). The Court noted, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. at 751-52. Therefore, it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel presented other strong issues. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000).

### 1.    *Failure to Challenge Prosecutorial Misconduct*

Summers first argues that his trial and appellate counsel were ineffective for failing to challenge prosecutorial misconduct in the government's intentional suppression of audiotape evidence and its use of false testimony before the grand jury to obtain his indictment. *See* § 2255 Claim 1, Doc. No. 1 at 6; Doc. No. 2 at 4-9.

<u>Alleged suppression of audiotape evidence</u>

The record establishes that Summers's trial counsel challenged the government's alleged suppression of the audiotape evidence as well as its alleged use of false testimony before the grand jury. The district court declared a mistrial in Summers's original trial, which began on August 25, 2009, after Summers's trial counsel filed a "Motion to Dismiss, Motion for a Mistrial, or in the Alternative Motion to Exclude Evidence and Testimony or Continue Trial" based on the government's untimely disclosure of audiotape recordings of telephone conversations involving Summers and a confidential informant. *See* Case No.

2:09cr31-MEF, Doc. No. 84; Doc. No. 100 at 36.  The court granted the motion for mistrial after hearing arguments from the parties regarding the untimely disclosure of the recordings. Although the court found that the government had not acted in bad faith in failing to disclose the recordings and that the content of the recordings was "inclusive" as to either its exculpatory or inculpatory value, the court found that the late disclosure of the evidence could have prejudiced Summers's attorneys in the preparation of his defense and that, consequently, a mistrial (but not dismissal of the charges) was warranted.  Case No. 2:09cr31-MEF, Doc. No. 100 at 33-36.

On December 7, 2009, the date on which Summers's retrial commenced, his trial counsel moved again for dismissal of the indictment based on alleged prosecutorial misconduct.  *See* Case No. 2:09cr31-MEF, Dec. 7, 2009, docket entry.  The district court denied the motion "for same reasons as stated on the record during the August 2009 jury trial."  *Id*.  Accordingly, notwithstanding Summers's claim, the record demonstrates that Summers's trial counsel vigorously challenged the government's alleged suppression of the audiotape evidence.  Therefore, Summers claim that his trial counsel was ineffective in this regard fails.

Nor does Summers establish that his appellate counsel was ineffective for failing to pursue this issue on appeal.  He demonstrates no abuse of discretion in the district court's findings that the government did not act in bad faith in failing to timely disclose the recordings and that the content of the recordings was neither clearly exculpatory nor clearly

inculpatory.  Further, he demonstrates no error in the remedy applied by the district court, i.e., declaring a mistrial as opposed to dismissing the charges.  By the time of Summers's December 2009 retrial, the audiotapes in question were available for Summers's lawyers to review for over three months, ample time for his counsel to use the recordings in preparing a defense.  Summers presents no persuasive argument that had his appellate counsel presented this issue on appeal, he would have received a favorable ruling by the appellate court.  Consequently, he is not entitled to relief based on this claim of ineffective assistance of appellate counsel.

<u>Alleged use of false testimony before the grand jury</u>

On August 23, 2009, shortly before Summers's original trial commenced, Summers's trial counsel filed a "Motion to Dismiss Indictment Due to Government's Prosecutorial Misconduct," arguing that the indictment should be dismissed because the sole government witness to testify before the grand jury, DEA Special Agent Eddie Spivey, had falsely testified that Summers was present during a June 4, 2008, drug transaction involving Summers's codefendant and a confidential informant.  *See* Case No. 2:09cr31-MEF, Doc. Nos. 74, 83.  After hearing arguments from the parties, the district court denied the motion to dismiss the indictment.  *Id.*, Doc. No. 99 at 2-38.  In denying the motion to dismiss, the district court found that although Agent Spivey was incorrect when testifying that Summers was present at the June 4, 2008, drug transaction, there was no evidence that Agent Spivey's testimony was made in bad faith or that he intentionally gave materially false testimony

before the grand jury. *Id*. at 37. Thus, there was no evidence of prosecutorial misconduct.[6] *Id*. The court further found there was sufficient other undisputed evidence presented to the grand jury to provide probable cause to believe Summers was, in fact, a coconspirator as charged in the indictment.[7] *Id*.

Summers's trial counsel renewed the motion for dismissal of the indictment based on alleged prosecutorial misconduct at Summers's December 2009 retrial, where the district court denied the motion for the reasons it stated during the August 2009 trial. *See* Case No. 2:09cr31-MEF, Dec. 7, 2009, docket entry. Thus, the record shows Summers's trial counsel actively sought dismissal of the indictment based on the government's alleged use of false testimony before the grand jury. Summers's claim that his trial counsel was ineffective in this regard lacks merit.

Summers does not demonstrate his appellate counsel was ineffective for failing to pursue this issue on appeal. First, he establishes no error in the district court's denial of his trial counsel's motion to dismiss the indictment and fails to show such a claim would have

---

[6] The district court indicated part of its reasoning in denying the motion to dismiss was informed by *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988), where the Supreme Court considered whether dismissal of the indictment was warranted where prosecutors caused IRS agents "to 'summarize' evidence falsely and to assert incorrectly that all the evidence summarized by them had been presented previously to the grand jury." 487 U.S. at 260. The Supreme Court held that "[b]ecause the record does not reveal any prosecutorial misconduct with respect to these summaries, they provide no ground for dismissing the indictment." *Id*. The Supreme Court further held that "[t]o the extent that a challenge is made to the accuracy of the summaries, the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment." *Id*. at 261.

[7] The undisputed evidence indicated that, shortly before the June 4, 2008, drug transaction, Summers made a phone call to the confidential informant and directed him to go to the apartment where the informant made the drug buy.

succeeded on appeal.  Furthermore, it is well settled that a petit jury's subsequent guilty verdict renders "any error in the grand jury proceeding connected with the charging decision [ ] harmless beyond a reasonable doubt."  *United States v. Mechanik*, 475 U.S. 66, 70 (1986); *see also, e.g.,United States v. Cosme*, 134 Fed. App'x 391, 393 (11th Cir. 2005).  Summers's appellate counsel would not have succeeded if he pursued this issue on appeal.  Therefore, Summers cannot demonstrate deficient performance by his appellate counsel or any resulting prejudice.

### 2.    *Failure to Advise of Right to Rehearing*

Summers contends his appellate counsel was ineffective for failing to advise him of his right to apply for rehearing or rehearing en banc following the adverse decision by the appellate court.[8]  *See* § 2255 Claim 2, Doc. No. 1 at 7; Doc. No. 2 at 9-10.

An application for rehearing, or rehearing en banc, is discretionary.  *See, e.g., Pitts v. United States*, 2011 WL 5025097, at *3-4 (S.D. Fla. Sep. 6, 2011).  Although the Eleventh Circuit has not directly addressed this issue, the weight of authority from other circuits holds that a defendant's constitutional right to assistance of counsel does not require an attorney to inform his client of his right to proceed with a discretionary appeal.  *See United States v. Arechiga–Ramirez*, 370 Fed. App'x 784, 785 (9th Cir. 2010) (rejecting § 2255 claim of

---

[8] In an affidavit filed with this court, Summers's appellate counsel, Russell Duraski, states that after the Eleventh Circuit's adverse decision against Summers in its April 8, 2011, opinion, he discussed possible next steps with Summers and Summers's wife; that both talked about the financial and emotional strain the matter had placed them under and gave him what he believed were clear instructions not to continue any further; and that based on those conversation, he took no further action.  Doc. No. 9 at 2-3.

ineffective assistance of counsel based on failure to advise of right to petition Supreme Court for writ of certiorari); *Steele v. United States*, 518 F.3d 986, 988 (8th Cir.2008) (rejecting § 2255 claim of ineffective assistance of counsel based on alleged breach of the Eighth Circuit's Criminal Justice Act Plan where counsel allegedly "failed to inform petitioner of the procedure and time limits for filing a certiorari petition *pro se*," finding "[w]e disagree that such violations would create a constitutional right to effective assistance of counsel"); *Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009) (rejecting claim for relief based upon counsel's failure to file a petition for rehearing en banc or for writ of certiorari, because "the Constitution does not entitle a defendant to the assistance of counsel for a discretionary appeal"); *Pena v. United States*, 534 F.3d 92, 95-96 (2d Cir. 2008) (rejecting § 2255 claim of ineffective assistance of counsel based on failure of appellate counsel to notify petitioner of right to file for certiorari); *Moore v. Cockrell*, 313 F.3d 880, 882 (5th Cir. 2002) (rejecting § 2255 claim of ineffective assistance of counsel based on failure of counsel to timely notify petitioner of the outcome of his direct appeal which allegedly resulted in petitioner being time-barred from filing a discretionary appeal).  Therefore, the alleged failure of Summers's appellate counsel to advise him of his right to apply for rehearing or rehearing en banc did not deprive him of a constitutional right.

Even if Summers had a constitutional right to have counsel advise him of his opportunity to apply for rehearing or rehearing en banc following the adverse decision by the appellate court, Summers's ineffective assistance claim would fail under the second prong

of the *Strickland* test because he has not shown prejudice.  Nothing in the arguments Summers raised on appeal or raises now suggests that rehearing or rehearing en banc would have been granted in his case had he filed such an application, or that the ultimate outcome of the proceedings would have been different.[9]  *See United States v. Johnson*, 2012 WL 1802102, at *8 (N.D. Fla. May 17, 2012) (rejecting § 2255 claim of ineffective assistance of counsel based on failure of counsel to notify petitioner of "right to rehearing and/or certiorari review to the U.S. Supreme Court").  Summers is not entitled to any relief based on this claim.

### 3.   *Failure to Argue for 1:1 Crack-to-Powder-Cocaine Ratio*

Summers contends his trial and appellate counsel were ineffective for failing to object to or appeal the district court's decision not to sentence him using a 1:1 crack-to-powder-cocaine ratio, especially in light of *Spears v. United States*, 555 U.S.261 (2009).  *See* § 2255 Claim 4, Doc. No. 1 at 8; Doc. No. 2 at 12-14.

In *Spears*, the Supreme Court held that a sentencing court may vary downward from the advisory guideline range in a crack cocaine case based solely on its view that the 100:1 ratio embodied in the Sentencing Guidelines for the treatment of crack cocaine versus powder cocaine creates an unwarranted disparity within the meaning of 18 U.S.C. § 3553(a). The only fact necessary to justify such a variance is the sentencing court's disagreement with the guidelines; that is, its policy view that the 100:1 ratio creates an unwarranted disparity.

---

[9] Summer's *pro se* petition for writ or certiorari was denied by the Supreme Court.

*Id*. at 263-64.

The transcript of the sentencing hearing reflects that the district court was aware that it was not bound by the Sentencing Guidelines, as the court entertained argument from Summers's counsel that, based on a 1:1 ratio, the court should grant a downward variance in Summers's offense level, to where Summers's guidelines range would be 33 to 41 months.[10] *Sentencing* at 32-36.  Summers's counsel acknowledged that the court was bound by the 120-month statutory minimum for Summers's offense, but asked that the downward variance apply so the court would sentence Summers to the 120-month minimum, below the calculated guidelines range of 151 to 188 months.  Although the court imposed a within-the-guidelines sentence of 160 months, there is nothing in the record indicating the court did not view the guidelines as advisory or was unaware that it could sentence Summers's below the guidelines range based on counsel's 1:1 ratio argument.

Summers points to the following exchange to support his claim that the district court believed it was bound by the Sentencing Guidelines:

> [UNITED STATES ATTORNEY]:  Your Honor, there are no objections by the United States; however, I do have an obligation pursuant to the Department of Justice to let the Court know that the position of the Department of Justice is that there is a one-to-one ratio between the sentencing for crack and powder cocaine.
>
> THE COURT: You can stop right there.  I understand your political position and from the United States Attorney's office.  That is a congressional issue.  If y'all wish to make that point known to anybody that's going to change

---

[10] Summers's counsel also presented this argument in a lengthy Sentencing Memorandum filed with the court.  Case No. 2:09cr31-MEF, Doc. No. 159.

the law, it is not the Court.  I'm not in the business of changing the law.  I'm in the business of interpreting it and applying it.  And as it stands right now, there is no legal one-to-one ratio of crack to powder cocaine.  If you wish to change that, take that up with your senators and congressmen.

*Sentencing* at 18-19.

It is apparent from this exchange that the district court was discussing its obligation to comply with the *statutory* sentencing laws enacted by Congress and was not referring to its discretion regarding the advisory Sentencing Guidelines enacted by the United States Sentencing Commission.  The court's comments during this exchange do not support Summers's claim that the court believed it could not exercise its discretion to sentence him below the calculated guidelines range based on his counsel's 1:1 ratio argument.  The district court was bound, however, by the statutory minimum sentence of 120 months for the charges in the indictment.  *See* 21 U.S.C. § 841(a)(1) & (b)(1)(A).

In sum, the record reflects that Summers's trial counsel urged the district court to impose a sentence below the calculated guidelines range, based on the crack-to-powder cocaine disparity, and that the district court understood it was not bound by the advisory guidelines range.  Thus, Summers's trial counsel did not render ineffective assistance in this regard.  Further, Summers's appellate counsel was not ineffective for failing to argue on appeal that the district court misunderstood its discretion under the Sentencing Guidelines, as the record reflects this was not so.

Finally, because the district court granted Summers's § 3582(c)(2) motion in October 2012 and reduced his sentence to 120 months in prison after applying Amendment 750 of the

Sentencing Guidelines, Summers's § 2255 claim is essentially moot, as his 120-month sentence is the lowest possible sentence he may receive under the controlling statutes.

### 3.   *Failure to Challenge Proof That Controlled Substance Was Crack for Purposes of Sentencing*

Summers contends his trial and appellate counsel were ineffective for failing to argue the government did not prove the controlled substance for which he was sentenced was crack and not some other form of cocaine base, which would have resulted in a lower base offense level under U.S.S.G. § 2D1.1(c).  *See* Claim 5, Doc. No. 1 at 9; Doc. No. 2 at 14-17.

Section 2D1.1(c) of the Sentencing Guidelines includes the following definition of cocaine base:

> "Cocaine base," for purposes of this guideline, means "crack."  "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

U.S.S.G. § 2D1.1(c) note D.  By this definition, § 2D1.1 recognizes that "crack" is one form, among others, of cocaine base, and the only form subject to the sentencing "enhancements" of § 2D1.1.[11]  *See United States v. Munoz-Realpe*, 21 F.3d 375,  376-79 (11th Cir. 1994).  The Seventh Circuit Court of Appeals, when confronted with a claim similar to Summers's, has noted that "there is sufficient expert evidence, albeit qualitative rather than quantitative, that the sale of any form of cocaine base other than crack is rare...."  *United States v. Gonzalez*,

---

[11] Summers's base offense level at his February 2010 sentencing was 30, based on the 53.77 grams of crack cocaine attributed to him.  *See* Drug Quantity Table, U.S.S.G. § 2D1.1(c)(5) (2009).  At that time, the base offense level for 53.77 grams of other forms of cocaine was 16.  *Id.*, U.S.S.G. § 2D1.1(c)(12) (2009).

17

608 F.3d 1001, 1005 (7th Cir. 2010).

Here, the forensic scientist who testified at Summers's trial stated the rocklike substance she analyzed was known as "crack." Tr.-Vol. II at 121. The law enforcement officer who assisted in the controlled buy testified that the substance sold in such transactions was commonly called "crack or rock or hard." Tr.-Vol. I at 24; *see also id*. at 54, 64, 80. The confidential informant who participated in the controlled buy testified the purchase was for "crack." Tr.-Vol. II at 55, 65, 92, 105. Summers does not point to any evidence suggesting that the drug for which he was sentenced was some form of cocaine base other than crack. Thus, the government proved by a preponderance of the evidence (the standard of proof for a sentencing issue) that the form of cocaine base for which Summers was sentenced was indeed crack.

Because such an argument would not have succeeded, Summers has not shown that his trial and appellate counsel were ineffective for failing to argue the government did not prove the controlled substance for which he was sentenced was crack. Therefore, he is not entitled to any relief based on this claim.

### 4. Failure to Object to or Appeal Use of Prior Conviction in Calculation of Criminal History

Summers contends his trial and appellate counsel were ineffective for failing to object to or appeal the use of his prior Alabama conviction for unauthorized use of a motor vehicle in calculating his criminal history points because, he says, the conviction was for a minor traffic infraction. *See* § 2255 Claim 6, Doc. No. 1 at 9; Doc. No. 2 at 17-19.

18

The Presentence Investigation Report ("PSI") adopted by the district court assessed Summers one criminal history point for a 2005 Alabama conviction for unauthorized use of a motor vehicle, for which he received a 12-month suspended sentence.  PSI at p. 7, ¶ 28. The offense of "Unauthorized Use of a Vehicle" is codified at § 13A-8-11, Ala. Code. 1975, and is classified as a Class A misdemeanor where force or the threat of forece is not involved.  *See* § 13A-8-11(a)(4), Ala. Code. 1975.  Sections 4A1.1(c) and 4A1.2(c) of the Sentencing Guidelines provide that all misdemeanor convictions with sentences of less than 60 days are to be assessed one criminal history point, with the exception of certain minor misdemeanors including traffic infractions such as careless or reckless driving or speeding, for which no points should be assessed.  *See* U.S.S.G. §§ 4A1.1(c) & 4A1.2(c)(1)-(2). Chapter 8 of the Alabama Criminal Code is entitled "Offenses Involving Theft" and does not encompass minor traffic infractions.  Summers's misdemeanor conviction for unauthorized use of a motor vehicle was correctly assessed one criminal history point.  Therefore, his trial and appellate counsel were not ineffective for failing to argue this issue.  *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to argue a meritless claim); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (same).[12]

5.   ***Failure to Object to or Appeal Application of U.S.S.G.
     § 4A1.1(d) in Calculation of Criminal History***

---

[12] A total of 6 criminal history points were assessed against Summers, placing him in criminal history category III.  PSI at p. 7, ¶ 31. Even excluding the one criminal history point for his misdemeanor conviction, his remaining 5 criminal history points still placed him in criminal history category III.

Summers contends his trial and appellate counsel were ineffective for failing to object to or appeal the addition of two points to his criminal history under U.S.S.G. § 4A1.1(d). *See* § 2255 Claim 7, Doc. No. 1 at 9; Doc. No. 2 at 19-21.

The PSI adopted by the district court assessed Summers two criminal history points under U.S.S.G. § 4A1.1(d) because "[a]t the time the instant offense was committed, the defendant was on parole." PSI at p. 7, ¶ 30. At the time of the offense, Summers was on parole for a 1993 Alabama conviction for second-degree robbery. PSI at pp. 6-7, ¶ 30. According to Summers, the two points assessed under § 4A1.1(d) was a "recency enhancement" that should not have been applied at his sentencing. Doc. No. 2 at 20-21. Summers is incorrect.

Prior to November 1, 2010, the Sentencing Guidelines required a recency enhancement of two criminal history points "if the defendant committed the instant offense less than two years after release from imprisonment...." U.S.S.G § 4A1.1(e) (2009). Effective November 1, 2010, the guidelines eliminated this two-point recency enhancement pursuant to Amendment 742. *See* U.S.S.G. Appx. C, Amend 742; *United States v. Medrano*, 429 Fed. App'x 930, 932 n.1 (11th Cir. 2011). The two-point recency enhancement is not applicable to defendants sentenced after November 1, 2010.

Amendment 742 did not apply to U.S.S.G § 4A1.1(d). Section 4A1.1(d) requires an enhancement of two criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release,

20

imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d). The Commentary to Amendment 742 clarifies that U.S.S.G. §§ 4A1.1(a)-(d) and (f) "remain included in the criminal history score after the amendment." U.S.S.G. Appx. C, Amend 742.

Here, the district court correctly assessed Summers two criminal history points under § 4A1.1(d) because he was on parole when he committed the instant offense. Therefore, his trial and appellate counsel were not ineffective for failing to argue this issue, and this claim entitles him to no relief.

### 6.   *Failure to Object to or Appeal Errors in Jury Instructions*

Summers contends his trial and appellate counsel were ineffective for failing to object to or appeal several instances of what he says were improper jury instructions by the district court. *See* § 2255 Claim 8, Doc. No. 1 at 9; Doc. No. 2 at 21-28.

First, Summers excepts to the following introductory instruction by the district court, given to jurors before opening arguments:

> Because you will be called upon to decide the facts of the case, you should give careful attention to the testimony and the evidence presented for your consideration during the trial, but you should keep an open mind and should not form any opinion or state any opinion about the case one way or the other until you have heard all of the evidence and *have heard the closing instructions of the attorneys* as well as my instructions to you on the applicable law.

Tr.-Vol. I at 2-3 (emphasis added).

Summers maintains the highlighted portion of this instruction "unequivocally informed the jury that the attorneys' arguments were in fact evidence which should be reviewed when determining the facts of the case." Doc. No. 2 at 22. While it seems unlikely

jurors would have understood this instruction in the way Summers insists, any possible error was cured elsewhere in the district court's introductory instructions, where the court instructed jurors:

> We will now begin by affording the attorneys for each side an opportunity to make opening statements to you in which they may explain to you the issues in the case and summarize the facts they expect the evidence will show. *After all the testimony and evidence has been presented, the attorneys will then be given another opportunity to address you at the conclusion of the trial and to make their summations or their closing arguments in the case. The statements that the attorneys make now as well as the arguments they present to you at the conclusion of the trial are not to be considered by you either as evidence in the case, which will only come from the witness stand, and exhibits*; nevertheless, these statements or arguments are intended to help you understand the evidence as it comes in, the issues or disputes that you will be called upon to decide, as well as the position taken by both sides, so I ask you now to give the attorneys your close attention for their opening remarks.

Tr.-Vol. I at 2-3 (emphasis added).[13]

Summers was not prejudiced by his counsel's failure to object. He is not entitled to any relief on this claim of ineffective assistance of trial and appellate counsel.

Summers also faults his counsel for failing to object to the following introductory instruction by the district court:

---

[13] Later, when instructing the jury before it began its deliberations, the district court also stated:

> As I said earlier, you must consider only the evidence that I have admitted into this case. The term evidence includes the testimony of the witnesses and the exhibits admitted into the record. Remember that anything the attorneys say is not evidence in this case. It is your own recollection and interpretation of the evidence that controls. What the attorneys say is not binding upon you.

Case No. 2:09cr31-MEF, Doc. No. 177 at 4.

From time to time during the trial, I may be called upon to make rulings of law on motions or objections made by the attorneys.  You should not infer or conclude from any ruling that I may make that I have any opinion on the merits of the case favoring one side or the other.  I do not.  *And if I sustain an objection to a question that goes unanswered by the witness, you should not speculate on what the answer might have been, nor should you draw any inference or conclusion from the question itself.*

Tr.-Vol. I at 3-4 (emphasis added).

According to Summers, this instruction was incomplete because the district court failed also to inform jurors "that any answer solicited from the witness, and to which objection should be sustained, should also draw no speculation or inference as to its validity." Doc. No. 2 at 22.

The additional instruction called for by Summers would have been both misleading and unnecessary. A witness's answer over a sustained objection is subject to the same "speculation or inferences as to its validity" as testimony given by a witness under any circumstances.  If the court finds a witness has improperly answered a question over a sustained objection, the court may instruct jurors to disregard the answer – a stronger admonition than telling jurors to "draw no speculation or inference as to the validity" of the answer.  Summers's trial and appellate counsel were not ineffective for failing to argue that the district court should have given the misleading and unnecessary instruction called for by Summers.  Further, Summers points to no instance in the record where a witness improperly answered a question over a sustained objection.  He is not entitled to any relief based on this claim.

23

Finally, Summers contends the district court erred by instructing jurors on the definition of "possession with intent to distribute" in response to a question on a note from the jury during its deliberations.  Doc. No. 2 at 23.  Although Summers's trial counsel objected to the court's instruction, arguing it was unnecessary, his appellate counsel did not pursue the issue.  In instructing jurors on the meaning of "possession with intent to distribute," the court was careful to explain that the instruction was relevant only to Count 1 of the indictment, which charged Summers with conspiracy to possess with intent to distribute crack, and was not relevant to Count 2, which charged Summers with distribution of crack.  Tr.-Vol. III at 56-57.  Summers fails to demonstrate in any way how the court's instruction was misleading or deprived him of a fair trial.  Consequently, he is not entitled to any relief based on this claim of ineffective assistance of trial and appellate counsel.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Summers be DENIED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before October 13, 2014**.  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District

Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 266th day of September, 2014.


/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE